**JEFFERY R. MENARD, SBN 248508**
350 Tenth Ave.
STE 1000
San Diego, CA 92101
Telephone: (858) 869-9529
Fax: (858) 605-6170
Jmenard22@gmail.com

**Thomas Kilburn Shanner, SBN 218515**
Shanner & Associates
7851 Mission Center Ct Ste 208
San Diego, CA 92108
Telephone: (619) 232-3057
Fax: (866) 286-5061
toby@shannerlaw.com

Attorneys for Plaintiffs JOEL B. VOLSKY and SUSAN C. VOLSKY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT CALIFORNIA

|  |  |
|---|---|
| JOEL B. VOLSKY and<br>SUSAN C. VOLSKY,<br><br>       Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION; GREEN TREE SERVICING LLC. and Does 1 through 10<br><br><br>       Defendants. | Case No.: 13-cv-1177-JLS-NLS<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 USC 1692 ET SEQ.); VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CCC SECTION 1788-1788.33); VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 USC 1681 ET SEQ.); ELDER ABUSE (CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 15610.53); VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227 ET SEQ.); DECLARATORY RELIEF AND INTRUSION** |

**DEMAND FOR JURY TRIAL**

COMES NOW PLAINTIFFS' who seek damages against the Defendants, and each of them as follows:

**I**

**GENERAL ALLEGATIONS**

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act (CCC § 1788-1788.32) the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA") and Elder Abuse, California Welfare and Institutions Code Section 15610.53.

2. The legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3.   Joel B. Volsky and Susan C. Volsky, individually, (hereinafter "Plaintiffs"), brings this action to challenge the actions of BANK OF AMERICA, NATIONAL ASSICIATION  (Hereinafter "BA"), a business entity form unknown, GREEN TREE SERVICING LLC. (Hereinafter "GT") a business entity form unknown and Does 1 through 10, cumulatively "Defendants," with regard to attempts by Defendants, a debt collector, to unlawfully and abusively collect a debt allegedly owed by Plaintiffs, and this conduct caused Plaintiffs damage.

4.   For the purposes of this Complaint for Damages, unless otherwise indicated, "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers of Defendants named in this caption.

5.   Plaintiffs are natural people who reside in the County of San Diego, State of California and is allegedly obligated to pay a debt and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.   Plaintiffs are natural people from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiffs and are "debtors" as that term is defined by California Civil Code § 1788.2(h).

7.     Plaintiffs are informed and believe that Defendant BA, a business entity form unknown, is a company operating and licensed to and doing business in the City of San Diego, County  of San Diego County, State of California.

8.     Plaintiffs are informed and believe that Defendant GT, a business entity form unknown, is a company operating and licensed to and doing business in the City of San Diego, County  of San Diego County, State of California.

9.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 10, inclusive, are unknown to Plaintiffs and Plaintiffs therefore sue said defendants by such fictitious names.  Plaintiffs will seek leave of court to amend this complaint to show their true names and/or capacities when the same have been ascertained. Plaintiffs are informed, believe and thereupon allege that each of the Doe defendants is, in some manner, legally responsible for the events and happenings herein set forth and which proximately caused the injury and damages to Plaintiffs as herein alleged.

10.    Plaintiffs is informed and believes, and thereon alleges, that BA, GT and DOES 1 through 10 (together "Defendants") are entities that use instrumentalities of interstate commerce or the mails for business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and California Civil Code § 1788.2(c).

11. Plaintiffs are informed and believe, and thereon allege, that Defendants are not attorneys or counselors at law and are entities who, in the ordinary course of business, regularly, on behalf of themselves or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), and are "debt collectors" as that term is defined by California Civil Code § 1788.2(c).

12. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural people by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by 15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(f).

13. Plaintiffs allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by  15 U.S.C. § 1692a(5) and Cal. Civ. Code § 1788.2(d). Namely, the Plaintiffs have a mortgage that is or was being serviced by BA and GT.

14. The alleged debt is a mortgage secured by a Deed of Trust, previously serviced by BA, currently serviced by GT.

15.     Every month, Wells Fargo pays GT, (formerly BA) directly from the Plaintiffs' Wells Fargo Bank account.

16.     In June of 2012 Wells Fargo sent an additional $2,000.00.

17.     When Plaintiffs' noticed this additional $2,000.00 being paid to BA, they immediately took action to recover that $2,000.

18.     BA told Plaintiffs' that BA cannot refund the money until the check cleared.

19.     BA then told Plaintiffs' that BA needs a certified copy of Plaintiffs' bank account.  Wells Fargo sent a certified copy of Plaintiffs' bank account directly to BA as requested showing that the additional $2,000.00 had already been drawn on his account.

20.     BA did not refund Plaintiffs' their money, even after Plaintiffs performed all tasks required by BA to get their money refunded.

21.     Plaintiffs' actual mortgage payment is $2,352.24 however, Plaintiffs' pay BA $2,400.00 every month.

22.     When the July payment came due, Plaintiffs' sent BA a payment of $400.00 through his Wells Fargo account and Plaintiffs' mailed a letter to BA explaining why the payment is $400.00 and Plaintiffs' requested that BA apply the additional $2,000.00 overpayment from the previous month to the month of July.

23.   Plaintiffs resumed making payments of $2,400.00 in august and every month thereafter.

24.   Plaintiff has never missed or been late on any mortgage payment ever.

25.   Beginning in July of 2012, BA began calling Plaintiffs' landline multiple times a day.

26.   Plaintiffs' answered these phone calls and explained to BA what had happened but it fell on deaf ears.

27.   Plaintiffs' them mailed another letter to BA explaining the situation.

28.   After July of 2010, BA not only began calling Plaintiffs' repeatedly, even after Plaintiffs' explanations, but BA began assessing Plaintiffs' late fees and ultimately began putting derogatories on Plaintiff, Susan Volsky, credit report.

29.   Plaintiffs' have made approximately 25 phone calls in an attempt to fix this problem.

30.   Beginning in July of 2012, BA began calling Plaintiffs' 4-5 per day, every day for a total of approximately 900 phone call.

31.   Plaintiffs' then submitted a complaint with the Office of the Comptroller of Currency.  Plaintiffs' then received another phone call from a representative of BA to deal with Plaintiffs' complaint.  The representative

asked Plaintiffs' to fax him everything he has to a fax that did not exist. The representative at BA admitted to not setting up his fax number.

32.   The representative of BA who was dealing with Plaintiffs' OCC complaint told Plaintiffs' that he was going to fix the problem however, this problem has never been resolved and the harassing phone calls resumed.

33.   Plaintiffs' attempted to divert these harassing phone calls to the BA representative that is handling the OCC complaint however, the harassing phone calls did not stop.

34.   Every time the Plaintiffs' spoke to the collection agents at BA, they requested that BA stop calling them however, these calls never stopped.

35.   Every time, Plaintiff Joel Volsky answered BA's telephone calls, BA told Plaintiff Joel Volsky that they would not discuss this loan with him even after he emailed and mailed consent letters from Susan Volsky giving him permission to speak to BA about the subject loan.  After Plaintiff Joel Volsky hung up of BA, BA would routinely continue to call the Plaintiffs at the same telephone number with the intent to intimidate an elderly couple to pay BA money that is not owed and to harass the Plaintiffs to the point of an emotional breakdown.

36.   On one particular occasion, BA called Plaintiff Joel Volsky a "deadbeat", even after Plaintiff Joel Volsky explained to the representative of BA that he was current on his mortgage.

37.   On another occasion a representative of BA was very rude and condescending and in a very disrespectful manner said to Plaintiff Joel Volsky "why don't you just pay your debt".

38.   On numerous occasions, BA would demand to speak with Susan Volsky and would not take "no" (from Plaintiff Joel Volsky) for an answer even after Plaintiff Joel Volsky informed BA that she was working.

39.   BA would routinely not let Plaintiff Joel Volsky get off the phone. Plaintiff Joel Volsky would be forced to remain on the telephone much longer than he wanted to until he was finally forced to hang the phone up, only to have BA call back on that same day hours and sometimes even minutes later.

40.   BA would routinely ask to speak to the Plaintiff, Susan Volsky as BA felt she was easier to intimidate into paying money that was not owed.

41.   In April of 2013, GT then began servicing the mortgage.

42.   The first communication Plaintiffs' received from GT was a letter that Plaintiffs' are approximately $7,000.00 in arrears.  Plaintiffs' reiterates that they have never missed or been late on a mortgage payment.

43.   GT then began calling plaintiffs' numerous times per day.

44.   GT also began calling Plaintiff, Joel Volsky, on his cellular phone using an automated phone dialing system without the express consent of Joel Volsky.

45.   GT also began calling Plaintiff, Susan Volsky, at her place of employment after Plaintiff, Susan Volsky, specifically told them not to call her at work as she is not allowed to receive these types of phone calls at work.

46.   Plaintiffs' requested a debt validation from GT but have not received anything.

47.   Plaintiffs' estimate that GT made no less than 50 phone calls prior to the filing of this lawsuit.

48.   Plaintiffs' sent GT a fax and a letter requesting all phone calls stop and that all future communications be in writing.

49.   Since the initial filing of this lawsuit, GT has continued to telephone Plaintiffs on average 6 times per day or roughly 1500 phone calls today despite, knowing that the Plaintiffs are represented by the counsel listed above.

50.   All of GT's phone calls were made with the intent to intimidate and harass the Plaintiffs into dismissing this lawsuit and paying GT the penalties and fees they claim they are owed but are not owed.

51.   Since the filing of this lawsuit, the Plaintiffs credit scores have been so degraded that they cannot qualify for another loan even though no other derogatories other than the ones associated with BA and GT exist on their credit report.

52.   Plaintiff Susan Volsky, underwent an operation and cannot easily walk up stairs.  The Plaintiffs desire to sell their current home and buy a one level home for their overall health but cannot as they have attempted to qualify for another loan but cannot get one due to the derogatories on their credit reports by BA and GT.

53.   The collection communications made by BA, GT and their employees and agents to Plaintiffs were false, deceptive, harassing, oppressive, and abusive communications in violation of numerous and multiple provisions of the FDCPA and RFDCPA, including but not to limited to violations of 15 U.S.C Section 1692 d, 1692 c(c), 1692 c(a)(3), 1692 c(c),    1692 d(2), 1692 d(5), 1692 e, 1692 e(10), 1692(f) and 1692 f(1), 1692 f(5), 1692 g and California Civil Code Section 1788.17 by violating the above mentioned codes.

54.   The acts and omissions of the individual Defendants, and the other debt collectors employed as agents by Defendants who communicated with Plaintiffs as described herein, were committed within the course and scope

of their employment and/or agency relationship with their principals, Defendants BA, GT and Does 1 to 10.

55.   In committing the acts alleged herein, Defendants, BA, GT and DOES 1 through 10, and each of them, have acted maliciously (i.e., conduct with intent to cause injury to Plaintiffs; fraudulently and so as to subject Plaintiff to unjust hardship and conscious disregard for Plaintiffs' rights. Plaintiffs are informed and believe and thereon allege that each of these acts has been ratified and adopted by Defendants' BA, GT and Does 1 to 10's officers, and managing agents, so as to justify an award of exemplary and/or punitive damages in an amount to be determined at the time of trial in an amount sufficient to deter Defendants from engaging in the same conduct in the future.

## II.

## FIRST CAUSE OF ACTION

**(Violation of the Fair Debt Collection Practices Act**

**15 U.S.C. § 1692 et seq., both Plaintiffs against Defendants GT and Does 1**

**through 10)**

56.   Plaintiffs refer to the allegations in paragraphs 1 to 55 of their complaint and incorporate those allegations herein as if set forth in full.

57.    The foregoing acts and omissions of Defendants GT and Does 1 to 10, and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiffs.

58.    As a direct and proximate result of Defendant's GT and Does 1 to 10's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k (a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

59.     The conduct of Defendants, GT and Does 1 through 10, and each of them, in engaging in the wrongful collection of a debt in the manner alleged herein is part of a pattern of practice of illegally engaging in the wrongful collection of debts.   In particular, Plaintiffs are informed and believe and thereon allege that Defendants, GT and Does 1 through 10, and each of them have a practice of engaging in and did in this particular case the following acts:

    a.  Collecting debts they know are not due;

b.  Calling the Plaintiffs at the place of employment after being instructed not to do so as Plaintiffs are not permitted to have debt collection calls at work.

c.  Contacting alleged debtors at times, places and with such frequency that they know are harassing and;

d.  Falsely reporting to credit reporting agencies debts they know or in good reason should know are not due and using those reports to wrongfully force persons such as Plaintiffs to pay them on debts they know are not due.

e.  Contacting the Plaintiffs after GT knows they are represented by counsel

## III

## SECOND CAUSE OF ACTION

**(Violation of the Rosenthal Fair Debt Collection Practices Act**

**Section 1788 – 1788.32, both Plaintiffs against Defendant BA and GT and**

**DOES 1 through 10)**

60.  Plaintiffs refer to the allegations in paragraphs 1 to 59 of the complaint and incorporate those allegations herein as if set forth in full.

61. The foregoing acts and omissions of Defendants and each of them constitute numerous and multiple violations of the RFDCPA.

62. As a result of Defendants' violations of the RFDCPA, Plaintiffs are entitled to any actual damages pursuant to California Civil Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from Defendants.

63. The conduct of Defendants, BA, GT and Does 1 through 10 and each of them, in engaging in the wrongful collection of a debt in the manner alleged herein is part of a pattern of practice of illegally engaging in the wrongful collection of debts.   In particular, Plaintiffs are informed and believe and thereon allege that Defendants, BA, GT and Does 1 through 10 and each of them have a practice of engaging in and did in fact within this particular case commit the following acts:

   a. Collecting debts they know are not due;

   b. Calling the Plaintiffs at the place of employment after being instructed not to do so as Plaintiffs are not permitted to have debt collection calls at his work.

c.  Contacting alleged debtors at times, places and with such frequency that they know are harassing and;

d.  Falsely reporting to credit reporting agencies debts they know or in good reason should know are not due and using those reports to wrongfully force persons such as Plaintiffs to pay them on debts they know are not due.

e.  Contacting the Plaintiffs after GT knows they are represented by counsel

## IV

## THIRD CAUSE OF ACTION

## (ELDER ABUSE, CALIFORNIA WELFARE AND INSTITUTIONS CODE SECTION 15657.5 and 15610.30, Plaintiff JOEL VOLSKY against BA, GT and DOES 1 through 10)

64.  Plaintiffs refer to the allegations in paragraphs 1 to 63 of the complaint and incorporate those allegations herein as if set forth in full.

65.  JOEL VOLSKY is and was an "elder" at all times mentioned herein as that term is defined by the California Welfare and Institutions Code Section 15610.27.

66.    BA and GT and Does 1 through 10 are aware of JOEL VOLSKY's age which was 66 at the time the suit was commenced.

67.    As alleged herein BA wrongfully and fraudulently retained Plaintiff Joel Volsky's overpayment of  $2000.00 and has never returned that money after Plaintiff Joel Volsky had notified BA that the overpayment of $2000.00 was an error and fraudulently and falsely represented to Plaintiff Joel Volsky that if he complied with all of BA's requests and requirements they would return the overpayment to him when in fact they had no intention on doing so.

68.    BA knew that the Plaintiff, Joel Volsky is an elderly and are on a fixed income and by retaining the extra $2000 and not returning it to Plaintiff, Joel Volsky, BA knew it would cause the elder Plaintiff harm and it did in fact cause the elder Plaintiff harm.  Plaintiff Joel Volsky needed that extra $2000 to pay the remaining monthly household expenses.   When BA retained the $2000 and by not returning it to Plaintiff Joel Volsky, it caused him emotional and financial damages such as stress, loss of sleep, anxiety among many other damaging emotions.

69.    When GT acquired the servicing rights, GT was aware of the $2,000.00 that BA was fraudulently retaining.  GT continued to fraudulently retain this $2000 and refused to return it or apply it to the subsequent payment.

GT's retention of this property has caused the Plaintiff, Joel Volsy much alleged financial damages and emotional damages as GT keeps noticing Plaintiffs that they are over $8,000 in arrears despite never missing or being late on a payment.

70. If BA would have returned the $2,000 timely, the Plaintiffs would have used that $2,000 the following month to make the full payment and perhaps they would not have been forced to file a federal lawsuit for damages and declaratory relief.

71. As a result of BA and GT retaining the $2,000, the Plaintiffs have now suffered over 2000 phone calls in violation of Federal and State laws, have spent hundreds of hours attempting to clear this issue up, have had to deal with GT attempting to collect money that is not owed and have had to live with the degradation of their credit to the point that they cannot qualify for a loan and their American Express credit card has reduced their credit limit from $15,000 to $1300 even though the Plaintiffs have never missed or been late on a payment to American Express.  The Plaintiff, Susan Volsky, is now having trouble walking up stairs and due to the degradation of her credit, she cannot qualify for another mortgage in order to move to a single level house.

72.   The acts of Defendants, BA, GT and Does 1 through 10 and each of them in telephoning JOEL VOLSKY over 2000 times and the retention of their property has caused "mental suffering" as that term is defined in the California Welfare and Institutions Code Section 15610.53 and the "mental suffering" was brought about by the conduct of Defendants, BA, GT and Does 1 through 10.

73.   The Defendants BA, GT and Does 1 through 10, violation of the California Welfare and Institutions Code Section 15657.5 and 15610.30 subjects said Defendants, and each of them, to an award of punitive damages, attorney's fees and costs, and general damages in an amount to be established according to proof at the time of trial.

## V

## FOURTH CAUSE OF ACTION

**(VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT47 U.S.C. § 227 et seq., Plaintiff Joel B. Volsky and Susan C. Volsky against GT and Does 1 through 10)**

74.   Plaintiffs refer to the allegations in paragraphs 1 to 74 of the complaint and incorporates those allegations herein as if set forth in full.

75. This cause of action is specifically for all calls made to Joel Volsky's cellular phone. Plaintiffs are not alleging a TCPA violation to any telephone calls made to their residential telephone number

76. GT made numerous telephone calls to Plaintiff Joel Volsky's cellular phone.

77. All telephone calls that GT made to Plaintiff Joel Volsky's cellular telephone were made using an automatic telephone dialing system (ATDS). When Plaintiff Joel Volsky answered these ATDS phone calls, at first there was dead air. Seconds later a live person came on the call to discuss the issue with Plaintiff Joel Volsky.

78. The telephone number that the ATDS that GT dialed was the cellular telephone number of Plaintiff Joel Volsky.

79. GT did not have the express consent of Plaintiff Joel Volsky to dial his cellular telephone number.

80. The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the TCPA including, but not limited to, each and every one of the above-cited provisions of the TCPA, 47 U.S.C. § 227 et seq., with respect to each PLAINTIFF.

81. As a result of each and every Defendants' violations of the TCPA, PLAINTIFFS, Joel B Volsky and Susan C. Volsky are entitled to actual

damages pursuant to 47 U.S.C. §227 et seq.; statutory damages in an amount up to $500.00 for each violation pursuant to 47 U.S.C. §227 et seq.; statutory damages in an amount up to $1,500.00 for each willful or knowing violation pursuant to 47 U.S.C. §227 et seq.; and, reasonable attorney's fees and costs pursuant to 47 U.S.C. §227 et seq. from each and every Defendant herein.

## VII

## FIFTH CAUSE OF ACTION

**(DECLARATORY RELIEF Plaintiff Joel B. Volsky and Susan C. Volsky against GT and Does 1 through 10)**

82.   Plaintiffs refer to the allegations in paragraphs 1 to 82 of the complaint and incorporates those allegations herein as if set forth in full.

83.   Plaintiffs allege that are current on the subject debt, have never been late with a payment, nor have they every missed a payment with BA, GT and/or Does 1 to 10 as alleged herein.

84.   An actual controversy now exists between Plaintiffs and Defendants, and each of them relating to the legal rights and duties of the parties hereto, in that Defendants claim that they are owed a debt by Plaintiffs, when in fact no such debt is owed by Plaintiffs.  The competing claims establish that a real and actual controversy exists as to the respective rights of the parties to

this matter, including the existence of an alleged debt owed by Plaintiffs and Defendants continued reporting of derogatory comments on Plaintiff's credit report.

85.   Plaintiffs request that the Court make a finding and issue appropriate orders stating that Plaintiffs are current on their mortgage and have always been current.

86.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiffs will continue to be subjected to Defendants wrongful collection activity and  (2) Plaintiffs will continue to have derogatory comments on their credit report initiated by Defendants, and each of them, to Plaintiffs' harm and damage which adversely impacts Plaintiffs' creditworthiness.

87.    Plaintiffs requires that a determination be made immediately as to the rights of Defendants and each of them to collect a debt from Plaintiffs and to continue to report derogatorily on Plaintiff's credit report so that Plaintiffs do not suffer irreparable harm.

88.    Further, Plaintiffs will suffer irreparable harm consisting of the continued damage to their credit report and continued harassment for a debt they are current on, for which there is no adequate remedy at law, if Defendants and each of them are not enjoined from continuing to wrongfully attempt to

collect on the alleged debt and continue to wrongfully report the alleged debt as a derogatory comment on Plaintiffs credit report.  It is therefore requested that this Court issue a Temporary Restraining Order, Preliminary Injunction and Permanent injunction enjoining any further collection activity on the subject debt and further ordering Defendants and each of them to take all action necessary to remove the derogatory comments they have caused to be made for this alleged debts from Plaintiff's credit report.

## VIII

## SIXTH CAUSE OF ACTION

### (INTRUSION Plaintiff Joel B. Volsky and Susan C. Volsky against BA, GT and Does 1 through 10,  )

89.   PLAINTIFFS incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

90.   DEFENDANTS intentionally penetrated PLAINTIFF's zone of sensory privacy surrounding him by repeatedly calling him and harassing him.

91.    PLAINTIFFS had a reasonable expectation of seclusion and solitude at home and at work which is the primary place where most of these phone calls took place.

92.   The conduct of BA and GT listed in all the preceding paragraphs were highly offensive to the Plaintiffs and would be highly offensive to a reasonable person.

93.   Such highly offensive conduct includes:

   a.   Calling the Plaintiffs just minutes and hours after Plaintiff Joel Volsky hung up on Defendants.

   b.   Calling Plaintiff Joel Volsky a "deadbeat"

   c.   Saying to Plaintiff Joel Volsky in a rude and condescending manner "why don't you just pay your debt".

   d.   Continuing to call Plaintiffs after being told to stop

   e.   Continuing to call Plaintiffs after receiving a letter requesting that Defendants only communicate with Plaintiffs via mail.

   f.   Continuing to telephone Plaintiffs numerous times per day after knowing Plaintiffs are represented by counsel.

   g.   By using the volume of calls to intimidate and harass the Plaintiffs.

   h.   By refusing to discuss the loan with Plaintiff Joel Volsky even after receiving authorization letters.

   i.   By insisting upon speaking with only Plaintiff Susan Volsky as the Defendants believed she would be easier to intimidate into paying money that is not owed.

**WHEREFORE,** Plaintiffs prays that judgment be entered against Defendants as follows:

On the First Cause of Action

1.  for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each Defendant and for Plaintiffs;

2.  for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each Defendant and for Plaintiffs;

3.  for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each Defendant and for Plaintiffs.


On the Second Cause of Action;

1.  An award of actual damages pursuant to California Civil Code § 1788.30 (a), from Defendants for Plaintiffs;

2.  An award of statutory damages of $1,000.00, pursuant to California Civil Code § 1788.30(b), from all Defendants;

3.  An award of costs of litigation and reasonable attorney's fees, pursuant to California Civil Code § 1788.30(c), from Defendants.

On the Third Cause of Action;

1.  For an award of actual damages;

2.   For an award or reasonable attorney fees and costs;

3.   For an award of punitive damages or exemplary damages.

On the Fourth Cause of Action;

1.   For an award of actual damages pursuant to 47 U.S.C. §227 et seq.  against each and every Defendant and for each PLAINTIFF;

2.   For an award of statutory damages of $1,500.00 per violation pursuant to 47 U.S.C. §227 et seq. against each and every Defendant and for each PLAINTIFF;

3.   For an award of costs of litigation and reasonable attorney's fees pursuant to 47 U.S.C. §227 et seq. against each and every Defendant and for each PLAINTIFF.

On the Fifth Cause of Action;

1.   For an order and declaration that Plaintiff is and has always been current on her mortgage;

2.   For a Temporary Restraining Order, Preliminary Injunction and Permanent injunction enjoining any further collection activity on the subject debt and further ordering Defendants and each of them to take all action necessary to

remove the derogatory comments they have caused to be made for this alleged debts from Plaintiff's credit report.

On the Sixth Cause of Action;

1. For an award of actual damages against each and every Defendant and for each Plaintiff;

2. For an award of emotional distress damages against each and every Defendant and for each Plaintiff;

3. For an award of punitive damages against each and every Defendant and for each Plaintiff;

On all Cause of Action;

1. For costs of suit incurred herein;

2. For such further relief as the Court deems just and proper.


Dated:    1/20/2014                    By:   /s/Jeffery R. Menard
                                       Jeffery R. Menard, attorney for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in the above captioned matter.


Dated:       1/20/2014                 By:   /s/Jeffery R. Menard
                                       Jeffery R. Menard, attorney for Plaintiffs